Case No. 25-13913-E

# In the United States Court of Appeals For the Eleventh Circuit

———————

SHANNON SCHEMEL, et al.,

*Plaintiffs/Appellants,*

v.

CITY OF MARCO ISLAND, FLORIDA,

*Defendant/Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 2:22-CV-00079-KCD-DNF

———————

**APPELLEE, CITY OF MARCO ISLAND'S ANSWER BRIEF**

———————

**MATTHEW H. MANDEL, ESQ.**
**ANNE R. FLANIGAN, ESQ.**
**AMANDA A. PULIDO, ESQ.**
**WEISS SEROTA HELFMAN**
**COLE & BIERMAN, P.L.**
200 East Broward Blvd, Suite 1900
Fort Lauderdale, Florida 33301
(954) 763-4242
*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

**A.    Interested Persons**

Appellee, the City of Marco Island, respectfully submits this list of persons or

entities that may have an interest in the outcome of this review:

### Appellants

1.    Shannon Schemel a/k/a Shannon Druen

2.    Stephen Overman

3.    Michael Tschida

### Appellee

4.    City of Marco Island

### Trial Judge, Attorneys, and Law Firms

5.    Honorable Dudek, Kyle C., US District Judge

6.    Flanigan, Anne of Weiss Serota Helfman Cole & Bierman, P.L.-

Counsel for Appellee.

7.    Honorable Frazier, Douglas-US Magistrate Judge

8.    Mandel, Matthew of Weiss Serota Helfman Cole & Bierman, P.L.-

Counsel for Appellee.

9.    New Civil Liberties Alliance, Counsel for Appellant.

I

10.    Pulido, Amanda of Weiss Serota Helfman Cole & Bierman, P.L.-Counsel for Appellee.

11.    Trifoi, Andreia of New Civil Liberties Alliance-Counsel for Appellant.

12.    Vecchione, Julian John of New Civil Liberties Alliance-Counsel for Appellant.

13.    Weiss Serota Helfman Cole & Bierman, P.L., Counsel for Appellee.

**B.    Corporate Disclosure Statement**

Appellee, City of Marco Island, is a municipal corporation of the State of Florida, and as a result, has no parent company, subsidiary, or affiliate company that has issued shares to the public.

*Amanda A. Pulido*
Amanda A. Pulido

## STATEMENT REGARDING ORAL ARGUMENT

In accordance with Eleventh Circuit Rule 28-1, Appellee submits that the issues are adequately addressed in the parties' briefs and the decision-making process would not be significantly aided by oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................................. I

STATEMENT REGARDING ORAL ARGUMENT ............................................... III

TABLE OF CONTENTS ...................................................................................... IV

TABLE OF CITATIONS ...................................................................................... VI

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE .............................................................................. 1

STANDARD OF REVIEW .................................................................................. 3

SUMMARY OF ARGUMENT ............................................................................ 4

ARGUMENT ...................................................................................................... 4

    I.   APPELLANTS LACK STANDING TO PURSUE THEIR FOURTH AMENDMENT CLAIM OR INJUNCTIVE RELIEF RELATED THERETO. .............................................................................. 4

    II.   THE DISTRICT COURT PROPERLY DISMISSED THE APPELLANTS' FOURTH AMENDMENT CLAIM WITH PREJUDICE. ............................................................................................. 7

          A.   *The Fourth Amendment Is Implicated Only Where Private Matters Are Disclosed, Which Appellants Conceded Is Not The Case Here.* ................................................ 7

          B.   *No Search Occurs Where The Government Utilizes Systems That Solely Reveal Publicly Available Information.* ...................................................................... 10

    III.  THE AGGREGATION OF ALPR DATA DOES NOT CONSTITUTE A SEARCH BECAUSE THE ALPR SYSTEMS SOLELY CAPTURE LICENSE PLATE NUMBERS. ............................ 13

A.   *The ALPR Data Captured In This Case Bears No Resemblance To The "Near-Perfect" Surveillance Considered In Carpenter.* ...........................................14

B.   *The Subject ALPR Systems Are Not A "Dragnet-Type" Surveillance System.*...............................................15

IV.   THE DISTRICT COURT PROPERLY DISMISSED THE FIRST AMENDED COMPLAINT BECAUSE DISCOVERY WOULD NOT CHANGE THE LEGAL INFIRMATIES OF APPELLANTS' CLAIM. ...........................................19

CONCLUSION ...........................................................................20

CERTIFICATE OF COMPLIANCE ....................................................21

CERTIFICATE OF SERVICE ...........................................................21

# TABLE OF CITATIONS

**Page**

## Cases

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................. 17, 19

*Boyd v. United States*, 116 U.S. 616 (1886)...................................................7

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ........................................4

*Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523 (1967).................................................................................................7

*Cardwell v. Lewis*, 417 U.S. 583 (1974) ....................................................11

*Carpenter v. United States*, 585 U.S. 296 (2018) ............. 1, 2, 4, 7, 8, 9, 10, 14, 15

*Carroll v. United States*, 267 U.S. 132 (1925)...........................................7

*Coker v. Warren*, No. 23-11160, 2025 WL 1575578 (11th Cir. June 4, 2025) ...........................................................................................3

*Guthrie v. U.S. Gov't*, 618 Fed. App'x 612 (11th Cir. 2015) ...................................3

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013)................5, 6

*I.L. v. Alabama*, 739 F.3d 1273 (11th Cir. 2014)...........................................5

*Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329 (11th Cir. 2022)..........................19

*Katz v. United States*, 389 U.S. 347, 351 (1967) ........................................8

*Kyllo v. United States*, 533 U.S. 27 (2001) ...............................................8

*Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021)........................................................................ 15, 16, 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)......................................5

VI

*Magluta v. Samples*, 375 F.3d 1269 (11th Cir. 2004)....................................................3

*Olabisiomotosho v. City of Houston*, 185 F.3d 521 (5th Cir. 1999)........................12

*Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir. 1999) ......................................................3

*Schmidt v. City of Norfolk*, Civil No. 2:24cv621, 2026 WL 207513 (E.D. Va. Jan. 27, 2026) ................................................................6, 8, 10, 11, 13, 16

*Schmidt v. City of Norfolk*, No. 2:24-CV-621, 2025 WL 410080 (E.D. Va. Feb. 5, 2025) ......................................................................................16

*Scholl v. Ill. State Police*, 776 F. Supp. 3d 701 (N.D. Ill. 2025)................................6

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) ...........................................................5

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...............................................................5

*Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020).....................5

*United States v. Di Re*, 332 U.S. 581 (1948)................................................................7

*United States v. Ellison*, 462 F.3d 557 (6th Cir. 2006)..............................................12

*United States v. Gregory*, 128 F.4th 1228 (11th Cir. 2025) ......................................13

*United States v. Jiles*, No. 8:23-CR-98, 2024 WL 891956 (D. Neb. Feb. 29, 2024) ..........................................................................................15

*United States v. Jones*, 565 U.S. 400 (2012)................................................................9

*United States v. Knotts*, 460 U.S. 276 (1983) ..............................................10, 11, 19

*United States v. Miranda-Sotolongo*, 827 F.3d 663 (7th Cir. 2016) ........................12

*United States v. Toombs*, 671 F. Supp. 3d 1329 (N.D. Ala. 2023)...........................18

*United States v. Wilcox*, 415 F. App'x 990 (11th Cir. 2011) .............................. 12, 19

*Villarino v. Joekel*, No. 24-11124, 2025 WL 2329959 (11th Cir. Aug. 13, 2025) ..............................................................................................3

VII

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262 (11th Cir. 2001) ...............................................................................................5

## Statutes

*Section 316.0778(2), Florida Statutes...........................................................2, 18

## Other Authorities

*FDLE's Guidelines, § 6(e) ...................................................................18

## Rules

Federal Rule of Civil Procedure 12(b)(6) ...........................................3, 19

VIII

## STATEMENT OF THE ISSUES

1.      Whether Appellants, Shannon Schemel, Michael Tschida, and Stephen Overman ("Appellants"), have standing under Article III to assert their claims.

2.      Whether the district court correctly declined to extend the expressly narrow holding in *Carpenter v. United States*, 585 U.S. 296 (2018), to a case where Appellee, City of Marco Island's ("City", "Island" or "Appellee"), automated license plate recognition ("ALPR") systems solely reveal publicly available information.

3.      Whether the district court correctly dismissed Appellants' First Amended Complaint for failure to state a claim under the Fourth Amendment based on the City's use of its automated license plate reader system and its retention of data collected therefrom.

4.      Whether the district court correctly dismissed Appellants' First Amended Complaint with prejudice because no amendment could change the underlying legal deficiency of Appellants' Fourth Amendment claim.

## STATEMENT OF THE CASE[1]

This case involves the City's use of an ALPR system—fixed location cameras—on public roads. On April 22, 2021, the City installed three ALPRs. Doc. 50, pg. 2.

---

[1]     The City cites Appellants' initial brief herein as "I.B.: __," and references to the district court's record as "Doc. , pg._."

1

Per the operative complaint:

> The ALPRs photograph and record ***the license plate information*** of every vehicle that passes by. By mounting ALPRs at each of the three bridges by which one can enter or exit Marco Island, [the City] records and stores the license plate information of *every* vehicle that enters and exits Marco Island, as well as the time and date of entry and exit.

*Id.*, pg. 18 (emphasis added).

The City retains the license plate information captured by the ALPRs for three years. *Id.*, pg. 10. This is due to section 316.0778(2), Florida Statutes, which requires state officials to "establish a retention schedule for records containing images and data generated through use of an [ALPR] system. The retention schedule must establish a maximum period that the records may be retained," and Florida's Criminal and Juvenile Justice Information System Council's Guidelines for the Use of Automated License Plate Readers, which provide that "information that is gathered without specific suspicion may be retained for no longer than 3 anniversary years." Fla. Stat. § 316.0778(2).

The City moved to dismiss the First Amended Complaint, arguing that because Appellants maintain no privacy interest in their license plate numbers (which Appellants conceded below, *see* Doc. 58, pg.11 n.3), and that is all the ALPRs are alleged to have captured, the aggregate of such data does not constitute a search. Doc. 54. The district court agreed. Doc. 90. The court recognized that the ALPR systems hardly compare to the cell-site location information ("CSLI") data

considered by the Supreme Court in *Carpenter v. United States*, 585 U.S. 296 (2018), because the ALPRs "tell very little about a person's movements," and record only whether vehicles have entered or exit the City. Doc. 90, pg. 5. The district court found that the ALPRs do not track the whole of Appellants' movements, nor anything analogous. *Id.*, pg. 6. Therefore, because Appellants failed to plead a cognizable privacy interest, the district court dismissed Appellants' claims with prejudice.[2] Doc. 90. This appeal followed.

**STANDARD OF REVIEW**

This Court resolves jurisdictional issues before addressing the merits of the underlying claims. *Coker v. Warren*, No. 23-11160, 2025 WL 1575578, at *3 (11th Cir. June 4, 2025) (per curiam). Under the law of this circuit, "parties cannot waive subject matter jurisdiction, and we may consider subject matter jurisdiction claims at any time during litigation." *Villarino v. Joekel*, No. 24-11124, 2025 WL 2329959 at *4 (11th Cir. Aug. 13, 2025) (per curiam) (quoting *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999)).

The Court reviews *de novo* a district court's determination of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Guthrie v. U.S. Gov't*, 618 Fed. App'x 612, 615 (11th Cir. 2015); *Magluta v. Samples*, 375 F.3d 1269 (11th Cir.

---

[2] The court declined to exercise supplemental jurisdiction over Appellants' state law claims.

2004). "By contrast, [this Court] review[s] a district court's decision whether to dismiss a complaint with or without prejudice for abuse of discretion." *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (noting that district court's denial of motion to amend complaint is reviewed for abuse of discretion).

## SUMMARY OF ARGUMENT

Appellants lack Article III standing to pursue their Fourth Amendment claim because they have not sufficiently alleged (and cannot demonstrate) a concrete and imminent injury regarding the City's use of ALPRs.  Further, unlike the extensive surveillance discussed in *Carpenter v. United States*, 585 U.S. 296 (2018), the City's ALPR systems capture only publicly visible information, which does not infringe on privacy rights protected under the Fourth Amendment. Appellants, notably, concede a lack of a protected privacy interest in their license plate numbers. Finally, Appellants' cause of action was premised on a theory that fails to state a claim to relief that is plausible on its face. Thus, the district court's dismissal of Appellants' pleading with prejudice at the motion to dismiss stage was appropriate because the deficiency in Appellants' claims could not be cured by discovery or further amendment.

## ARGUMENT

I.    **APPELLANTS LACK STANDING TO PURSUE THEIR FOURTH AMENDMENT CLAIM OR INJUNCTIVE RELIEF RELATED THERETO.**

"Standing is one of the Article III case or controversy requirements, and must therefore be established as a threshold matter." *I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) (internal citation and quotation marks omitted). To have standing, a plaintiff "must demonstrate injury in fact, causation, and redressability. Failure to satisfy any of these three requirements is fatal." *Id.* (internal citation omitted). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). "A 'concrete' injury must be 'de facto'—that is, it must be 'real, and not abstract.'" *Trichell*, 964 F.3d at 996 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

"In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). Indeed, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" *Id.* at 1329 (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

Here, Appellants do not have standing to challenge the retention and potential sharing of the ALPR data because they have failed to allege that *anyone* will look at or has looked at said data. The entirety the Fourth Amendment claim and the injunctive relief Appellants seek is premised on the *City's* retention of the ALPR data. *See* Doc. 50, pg. 24. In support, the First Amended Complaint alleges that local police departments "frequently share all information about innocent motorists gleaned from their ALPRs with other law enforcement agencies," that the City "intends to share that information with the Federal Bureau of Investigation and other law enforcement personnel throughout Florida," and that "the City may also query the ALPR data it has collected without any particularized showing of suspicion." Doc. 50, pgs. 6, 14, 15. However, none of these allegations present a sufficient likelihood that Appellants' publicly-visible license plate numbers will be viewed or shared by City, resulting in injury to them, and is entirely premised on speculation. *Houston*, 733 F.3d at 1329. Therefore, Appellants have no basis to enjoin the City from retaining and sharing its ALPR data. *E.g.*, *Schmidt v. City of Norfolk*, Civil No. 2:24cv621, 2026 WL 207513, at *8 (E.D. Va. Jan. 27, 2026) (concluding that the plaintiffs lacked standing to challenge the warrantless query of the city's ALPR data because "there [was] no imminent threat of an injury from a future injury"); *Scholl v. Ill. State Police*, 776 F. Supp. 3d 701, 710 (N.D. Ill. 2025) (plaintiff's lacked

standing to challenge the warrantless use of ALPR database because their constitutional injuries were not sufficiently imminent).

## II. THE DISTRICT COURT PROPERLY DISMISSED THE APPELLANTS' FOURTH AMENDMENT CLAIM WITH PREJUDICE.

Appellants' initial brief is riddled with inaccuracies and over dramatizations of clear precedent. Appellants suggest that the Supreme Court's opinion in *Carpenter v. United States*, 585 U.S. 296 (2018), is a cautionary tale against technology advancements and was intended to prohibit the use of run-of-the-mill systems in public spaces. I.B.: 45. Such a suggestion undermines the purpose of the Fourth Amendment and subsequent jurisprudence.

### A. *The Fourth Amendment Is Implicated Only Where Private Matters Are Disclosed, Which Appellants Conceded Is Not The Case Here.*

The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). Thus, this analysis is guided by historical understandings "of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted." *Carroll v. United States*, 267 U.S. 132, 149 (1925); *see Boyd v. United States*, 116 U.S. 616, 630 (1886) (recognizing that the Fourth Amendment seeks to protect "the privacies of life" against "arbitrary power"); *United States v. Di Re*, 332 U.S. 581, 595 (1948) (a central aim of the framers was "to place obstacles in the way of a too

7

permeating police surveillance"). The Fourth Amendment protects only those matters that are intended to be private. *See Katz v. United States*, 389 U.S. 347, 351 (1967) (when a person "seeks to preserve something as private," and her expectation of privacy is objectively reasonable, an intrusion into that private sphere will generally qualify as a search).

The advancement of technology has no bearing on this traditional analysis. *Carpenter*, 585 U.S. at 310 ("[The Court] has kept this attention to Founding-era understandings in mind when applying the Fourth Amendment to innovations in surveillance tools."). Indeed, "[b]ecause rapid technological advances . . . make it impossible to predict how police surveillance will evolve, the Fourth Amendment analysis must remain nimble even as it remains grounded in founding-era traditions." *Schmidt v. City of Norfolk*, Civil No. 2:24cv621, 2026 WL 207513, at *9 (E.D. Va. Jan. 27, 2026); *see also Carpenter*, 585 U.S. at 310 ("As technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, [the] Court has sought to 'assure [ ] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" (quoting *Kyllo v. United States*, 533 U.S. 27, 34 (2001))). Likewise, the Supreme Court in *Carpenter* was clear that its decision was narrow and did not "call into question conventional surveillance techniques and tools, such as security cameras." 585 U.S. at 316.

Therefore, where the government's use of technological systems is implicated, a court considers what the aggregate of such data reveals. *See Schmidt*, 2026 WL 207513, at *9 ("Determining whether an ALPR system creates a too permeating police surveillance is, however, not subject to a universal answer, as all ALPR systems are not created equal.") In that same vein, the Supreme Court has recognized that "individuals have a reasonable expectation of privacy in the whole of their physical movements," as "society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue [an individual's] every single movement[.]" *Id.* (quoting *Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring)).

In *Carpenter*, the Supreme Court concluded that a record of the defendant's cell-site location over the course of 127 days "provide[d] an all-encompassing record of the holder's whereabouts." 585 U.S. at 311. This is because "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* Indeed, "the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Id.* (quoting *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)). Thus, even though the data

9

revealed only a brief estimate of the defendant's location, from the wealth of data received, the government could deduce a detailed log of an individual's whereabouts. *Id.* at 312–13. Such a record "achieve[d] near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 311–12.

Here, the district court correctly recognized that the circumstances outlined in *Carpenter* hardly compare to the present case. Doc. 90, pg. 5. When applying this standard to the City's use of the ALPRs, Appellants' Fourth Amendment rights are not encroached upon because there is nothing private about their publicly displayed license plates, and there is no collection of data that would enable the City to monitor each of Appellants' movements other than simply driving on a public road— something that a stationary law enforcement officer could unquestionably be allowed to do. Accordingly, the City submits the district court's order should be affirmed.

### B. *No Search Occurs Where The Government Utilizes Systems That Solely Reveal Publicly Available Information.*

Where, as is the case here, the government utilizes technology solely to access information not entitled to expectations of privacy, no search has occurred. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) ("Nothing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afford[] them."); *see also Schmidt*, 2026 WL 207513, at *13 ("[S]ince a collection of photos

10

taken in public places that are never accessed or analyzed reveals *nothing* about a person's movements from one place to another, it definitionally does not reveal 'the whole' of that person's movements." (emphasis in original)).

It is beyond dispute that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Knotts*, 460 U.S. at 281 (concluding that use of a beeper to track a defendant's movement through traffic was not a search); *see Schmidt*, 2026 WL 207513, at *13 ("[T]he analysis must remain tethered to the reality that what a person displays *in public* is definitionally not *private* - and the calculus only shifts when police surveillance is so intrusive that it crosses the line into cataloging the whole, or nearly the whole, of a person's movements." (emphasis in original)). This is because when an individual "travel[s] over the public streets, he voluntarily convey[s] to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination[.]" *Id.* at 281–82; *see also Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (plurality opinion) ("A car has little capacity for escaping public scrutiny."). Contrary to Appellants' theory regarding tracking movements over time (I.B., 16-18), this well-settled legal principle does not change even if a person travelling on a public road does so repetitively.

Likewise, it is well established that an individual has no reasonable expectation of privacy in their publicly visible license plate number. *E.g.*, *United States v. Wilcox*, 415 F. App'x 990, 992 (11th Cir. 2011) (affirming ruling that criminal defendant "did not have a reasonable expectation of privacy in the plainly visible license plate" and that the use of a license plate "tag reader" did not violate the Fourth Amendment); *United States v. Miranda-Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016) (holding that police officer's use of a suspect's tag number to retrieve registration information in a law enforcement database was not a "search" because the suspect had no reasonable expectation of privacy since the database contained only non-private information); *United States v. Ellison*, 462 F.3d 557, 561–63 (6th Cir. 2006) (rejecting an argument that storing and retrieving a motorist's information using a license plate reader program amounted to an unlawful warrantless search and stating that "[e]very court that has addressed this issue has reached the same conclusion."); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) (rejecting argument that computer check of license plate required a warrant because "[a] motorist has no privacy interest in her license plate number," which "is constantly open to the plain view of passersby").

Similarly, the use of stationary surveillance systems, such as police pole cameras or security cameras that photograph or record public areas, do not violate any objectively reasonable expectations of privacy. *See, e.g.*, *United States v.*

12

*Gregory*, 128 F.4th 1228, 1242–43 (11th Cir. 2025) (concluding that the use of a pole camera to survey the front area and backyard of a defendant's home was not a search because the pole camera surveyed only those areas that could be viewed by the public and did not track the defendant's movements); *Schmidt*, 2026 WL 207513, at *12 ("It is well-established that police pole cameras or security cameras that photograph or record public areas do not violate any objectively reasonable expectation of privacy."). Accordingly, while technology is ever-changing, the parameters of the Supreme Court's precedent is clear—where technological systems access only that which is publicly available, such as publicly displayed license plate readers, no search has occurred.

### III.   THE AGGREGATION OF ALPR DATA DOES NOT CONSTITUTE A SEARCH BECAUSE THE ALPR SYSTEMS SOLELY CAPTURE LICENSE PLATE NUMBERS.

Again, Appellants concede, as they must, that they have no expectation of privacy in the retention of their license plate numbers. I.B.: 22. Appellants contend, though, that the lower court misconstrued their claims, and instead claim to have a reasonable expectation of privacy in their physical movements that was breached by the ALPR systems. *Id.* However, this premise is a ruse.

The First Amended Complaint clearly alleged that "[t]he ALPRs photograph and record the license plate information of every vehicle that passes by," and that by mounting ALPRs on each of the City's three bridges "by which one can enter or exit

13

Marco Island, [the City] records and stores ***the license plate information*** of *every* vehicle that enters and exits Marco Island, as well as the time and date of entry and exit." Doc. 50, pg. 2 (emphasis added). Therefore, regardless of how Appellants attempt to frame their claim, the substance of their allegations show that the ALPR data captured nothing more than the publicly displayed license plate numbers. To circumvent this fatal fate, Appellants draw incomparable comparisons between *Carpenter* and similar cases that have considered the use of ALPR systems. As explained below, neither passes muster.

### A. *The ALPR Data Captured In This Case Bears No Resemblance To The "Near-Perfect" Surveillance Considered In Carpenter.*

Appellants' attempt to force this case to fit within the parameters defined by the Supreme Court in *Carpenter* is unavailing. Indeed, the cell-site location information (CSLI) data considered by the Court in *Carpenter* provided "an intimate window into a person's life," 585 U.S. at 311, whereas the ALPR systems here collect and retain nothing more than an individual's license plate number, *see* Doc. 50, pg. 2. Appellants present nothing more than speculation and conclusory arguments that the aggregation of ALPR data suddenly transforms it into an expectation of privacy. Nor do Appellants identify when that transformation occurs. The limited holding of *Carpenter* clearly dictates that for a search to occur, the technology used must capture "near perfect surveillance" of the defendant's

movements in both public and *private* locations. 585 U.S. at 311–12. At most, the ALPR data captures a license plate number that passes on a *public* roadway.

Appellants also suggest that the ALPR data is more precise than that dealt with in *Carpenter*, therefore raising greater privacy concerns. I.B.: 35. However, Appellants' contention mischaracterizes the threat posed by the cell data in *Carpenter*: even though the data revealed only a "wedge-shaped sector ranging from one-eighth to four square miles," because a cellphone follows its owner *everywhere*, the government could eventually deduce a detailed log of the defendant's movements. 585 U.S. at 312. "Unlike cell phones, ALPRs do not faithfully follow [their] owner[s] beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *United States v. Jiles*, No. 8:23-CR-98, 2024 WL 891956, at *19 (D. Neb. Feb. 29, 2024). Accordingly, the ALPR data considered here does not capture the same, or even similar, data decided by the Supreme Court to trigger Fourth Amendment protections.

### B. *The Subject ALPR Systems Are Not A "Dragnet-Type" Surveillance System.*

The thread of cases cited by Appellants applying *Carpenter* to the government's prolonged use of cameras in public spaces (*see* I.B.: 27–29) is similarly unpersuasive. In *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021), the Fourth Circuit considered an aerial

15

surveillance program that—as opposed to stationary ALPR here positioned on public roads—used planes equipped with cameras to ultimately capture an estimated twelve hours of coverage of around *90%* of Baltimore each day. *Id.* at 334. The court's conclusion was premised on the contention that "law enforcement could use [the] data to track a person's movements from a crime scene to, eventually, a residential location where the person remains. . . . They could use any number of context clues to distinguish individuals and deduce identity." *Id.* Likewise, in *Schmidt v. City of Norfolk*, No. 2:24-CV-621, 2025 WL 410080 (E.D. Va. Feb. 5, 2025), the city installed and operated an ALPR system consisting of *172 cameras* that covered most of the city. 2025 WL 410080, at *1–*2. The court found that the complaint adequately alleged the ALPR system tracked the whole of their movements because the ALPR system "create[ed] a drag-net system of surveillance," and it would be difficult to travel throughout the city without being captured on one of the cameras. *Id.* at *6.[3]

The instant matter is completely distinguishable. Unlike the facts contained in *Leaders* and *Schmidt*, Appellants' theory is entirely based on speculation and

---

[3] Despite the fact that there were 172 ALPRs at issue in *Schmidt*, the court ultimately disposed of the case on summary judgment, finding that "the evidence developed during discovery [was] insufficient to demonstrate that Defendants' current ALPR system capture[d] enough images of Plaintiffs — or other drivers — to reconstruct the whole of their movements." *Schmidt v. City of Norfolk*, 2026 WL 207513, at *13 (E.D. Va. Jan. 27, 2026).

16

hypotheticals. Indeed, as alleged, the City only has *three* total ALPRs that are mounted on the Island's three bridges and photograph and record the license plate information of vehicles that pass by. Doc. 50, pgs. 2, 14. Appellants next assert in conclusory fashion that the ALPR system "permits the City to discern not only their movements but also to *infer* detailed information about where and when they work, whether they are in town or away on vacation, and with whom they associate." *Id.*, pg. 31 (emphasis added). To support this contention, Appellants present the following theory:

> [I]f several houses of worship are located on the far side of one of the bridges, the City can reasonably infer that an individual is attending one house of worship if an individual crosses the bridge at 8:45 a.m. every Saturday morning and crosses back at 10:45 a.m., and that the individual is attending a different house of worship if the crossing occur at those same times on a Sunday morning.

*Id.*

A hypothetical assertion, however, cannot form the basis of Appellants' claims—even on a motion to dismiss. *E.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Nevertheless, Appellants' theory is flawed, because the only thing the ALPR system would confirm is when individuals cross one of the City's three bridges. The ALPRs do not show or track anything on, or off, the Island.  Nor do they track where a car is going when it crosses the City's three main bridges—

17

other than the fact that a vehicle is simply entering or exiting the City. Thus, the City would *never* be able to make an inference of any particular vehicle's destination.

Both *Leaders* and *Schmidt* dealt with camera systems that essentially surveyed *entire* cities, and based on those facts, the courts concluded that law enforcement *could* track the whole of the individuals' movements. 2 F.4th 330, at 334; 2025 WL 410080, at *6. The same certainly cannot be said for the three stationary cameras at issue here. Aside from identifying the time at which someone crosses, the ALPR systems contain no other information. The district court saw through this facade, recognizing that the ALPRs do not "reveal where any vehicle travels to" and do not "necessarily identify a vehicle's occupants." Doc. 90, pgs. 5–6. Rather, the ALPRs "simply provide[] a snapshot of" the vehicle's "location at a discrete time while traveling" on public roads. *Id.*, pg. 6 (quoting *United States v. Toombs*, 671 F. Supp. 3d 1329, 1333 (N.D. Ala. 2023)).

The City's retention period does not compel a different conclusion. Appellants recognize that the retention period is statutory, *see* Fla. Stat. § 316.0778(2) (requiring state officials to establish a retention period); FDLE's Guidelines, § 6(e) (ALPR data "may be retained for no longer than 3 anniversary years."), yet allege no factual basis to explain how a statutory retention period creates "near perfect surveillance." 585 U.S. at 311–12. As established, Appellants maintain no expectation of privacy in their license plate number, nor in their travel on public thoroughfares. *See, e.g.*,

18

*Wilcox*, 415 F. App'x at 992; *Knotts*, 460 U.S. at 281. At most, the ALPR data reveals when a license plate number crosses the bridges. Thus, regardless of the retention period of such data, the ALPR data *never* reveals who is travelling onto or off the Island, or where they are going. Therefore, regardless of how Appellants attempt to frame their claim, the actual facts alleged established that the ALPR system does not track the whole of Appellants' movements.

## IV. THE DISTRICT COURT PROPERLY DISMISSED THE FIRST AMENDED COMPLAINT BECAUSE DISCOVERY WOULD NOT CHANGE THE LEGAL INFIRMATIES OF APPELLANTS' CLAIM.

The district court correctly found that the deficiency of Appellants' claims is not due to a lack of a factual record and would not be cured by discovery. Doc. 90, pg. 6. "Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Under any theory, Appellants fail to allege a cognizable search, as the retention of ALPR data by three stagnant cameras reveals nothing more than an individual's license plate number, in which there is no reasonable expectation of privacy. Because the ALPR system captures no more than what occurs on the three bridges, there is no threat that the system could delve into the "near perfect surveillance" systems the Court warned about in *Carpenter*. Appellants present no

authority that would warrant a different conclusion. As such, dismissal with prejudice was appropriate and should be affirmed.

## CONCLUSION

On the basis of the foregoing, the Court should affirm the Final Order, Doc. 90, in all respects.

Dated:   February 17, 2026

Respectfully submitted,

By: /s/ Amanda A. Pulido
    MATTHEW M. MANDEL
    Florida Bar No. 147303
    ANNE R. FLANIGAN
    Florida Bar No. 113889
    AMANDA A. PULIDO
    Florida Bar No. 1039122
    WEISS SEROTA HELFMAN
    COLE & BIERMAN, P.L.
    200 East Broward Blvd., Suite 1900
    Fort Lauderdale, FL 33301
    Telephone: (954) 763-4242
    mmandel@wsh-law.com
    aflanigan@wsh-law.com
    apulido@wsh-law.com

    *Counsel for Appellee,*
    *The City of Marco Island*

20

## CERTIFICATE OF COMPLIANCE

On behalf Appellee, the City of Marco Island, I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the foregoing Answer Brief is proportionally spaced, has a typeface of 14 points or more, is set in Times New Roman, and contains 4,637 words.

*Amanda A. Pulido*
Amanda A. Pulido

## CERTIFICATE OF SERVICE

I, Amanda A. Pulido, counsel for appellee and a member of the Bar of this Court, certify that, on February 17, 2026, a copy of the foregoing was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

*Amanda A. Pulido*
Amanda A. Pulido