No. 25-13913-E

IN THE

# United States Court of Appeals for the Eleventh Circuit

---

SHANNON SCHEMEL, ET AL.,
*Plaintiffs-Appellants,*

v.

CITY OF MARCO ISLAND, FLORIDA,
*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, FORT MYERS DIVISION
(NO. 2:22-CV-00079-KCD-DNF)

---

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

---

Andreia Trifoi
 *Counsel of Record*
John J. Vecchione
Mark S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Suite 300
Arlington, VA, 22203
Phone: (202) 869-5210
Andreia.Trifoi@ncla.legal

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ...........................................................................ii

ARGUMENT ........................................................................................1

I.    APPELLANTS HAVE STANDING TO CHALLENGE THE SURVEILLANCE OF THEIR MOVEMENTS OVER TIME.................................................2

II.   APPELLANTS HAVE ADEQUATELY STATED A CLAIM THAT THE CITY'S LONG-TERM COLLECTION OF LOCATION HISTORY VIA ITS ALPR PROGRAM CONSTITUTES A FOURTH AMENDMENT SEARCH ..............7

A.    The Fourth Amendment Protects Appellants from Long-Term Government Surveillance Even in Public View........................8

B.    Appellants Have a Privacy Interest in Their ALPR Location History over Time.................................................................11

   1. Appellants Have Sufficiently Alleged That the City's Aggregated ALPR Location Data Is Capable of Revealing the Privacies of Life .......................................................14

   2. Appellants Have Sufficiently Stated That the City's ALPRs Are an Advanced Surveillance Technology That Reveals Information Previously Unknowable ......................................17

C.    Appellants Have Met Their Burden at the Motion to Dismiss Stage .................................................................................20

III.  THE FOURTH AMENDMENT MUST GOVERN THE ALPRS USED BY THE CITY, IRRESPECTIVE OF THEIR LAW ENFORCEMENT UTILITY OR LEGISLATIVELY IMPOSED GUARDRAILS ON THEIR USE .................22

CONCLUSION ...................................................................................28

CERTIFICATE OF COMPLIANCE..........................................................29

CERTIFICATE OF SERVICE.................................................................30

i

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Am. C.L. Union v. Clapper,*
785 F.3d 787 (2d Cir. 2015)..............................................................1, 2

*Camara v. Mun. Ct. of S.F.,*
387 U.S. 523 (1967) .............................................................................26

*Carpenter v. United States,*
585 U.S. 296 (2018) .....................1, 7, 8, 9, 10, 12, 13, 14, 16, 17, 21, 25

*City of Los Angeles v. Patel,*
576 U.S. 409 (2015) .............................................................................27

*Comm'ns Inv. Corp. v. F.C.C.,*
641 F.2d 954 (D.C. Cir. 1981)..............................................................12

*Katz v. United* States,
389 U.S. 347 (1967) ...............................................................................7

*Kyllo v. United States,*
533 U.S. 27 (2001) ..........................................................................13, 16

*Leaders of a Beautiful Struggle v. Balt. Police Dep't,*
2 F.4th 330 (4th Cir. 2021)........2, 3, 4, 10, 11, 15, 17, 18, 19, 20, 21, 27

*Leaders of a Beautiful Struggle v. Balt. Police Dep't,*
456 F. Supp. 3d 699 (D. Md. 2020).......................................................3

*Leaders of a Beautiful Struggle v. Balt. Police Dep't,*
979 F.3d 219 (4th Cir. 2021) .................................................................3

*Schmidt v. City of Norfolk,*
No. 2:24cv621, 2026 WL 207513 (E.D. Va. Jan. 27, 2026) ...... 4, 5, 6, 21

*Scholl v. Ill. State Police,*
776 F. Supp. 3d 701 (N.D. Ill. 2025) ..........................................3, 4, 5, 6

*Sidor v. Thornell,*
No. CV-25-08141-PCT-DWL, 2025 WL 3281746 (D. Ariz. Oct. 24,
2025) .....................................................................................................23

*Smith v. United States,*
873 F.3d 1348 (11th Cir. 2017) .......................................................16, 22

*United States v. Gregory,*
   128 F.4th 1228 (11th Cir. 2025)........................................................18
*United States v. Jones,*
   565 U.S. 400 (2012) ............................................... 9, 10, 17, 19
*United States v. Knotts,*
   460 U.S. 276 (1983) ..................................................... 9, 20, 25
*United States v. Porter,*
   No. 25-60163, 2026 WL 746292 (5th Cir. Mar. 17, 2026)...................24
*United States v. Smith,*
   110 F.4th 817 (5th Cir. 2024)..................................................... 13, 26
*United States v. Sturdivant,*
   786 F. Supp. 3d 1098 (N.D. Ohio 2025) ............................................20
*Virginia v. Moore,*
   553 U.S. 164 (2009) .......................................................................27

## Other Authorities

Orin S. Kerr,
   *The Digital Fourth Amendment: Privacy and Policing in Our Online
   World* (2025) ...............................................................................19

## ARGUMENT

The City of Marco Island ("the City") presents nothing to alter the conclusion that Appellants have adequately stated a claim that the City's ALPR program amounts to a warrantless search in violation of their Fourth Amendment rights. Appellants have argued that the City's ALPR program captures and retains three years of each resident's movements as they exit and enter Marco Island. This scheme allows the City to reconstruct Appellants' historical movements going back three years, thereby constituting a warrantless invasion of the reasonable expectation of privacy Appellants have in the whole of their movements over time. *See Carpenter v. United States*, 585 U.S. 296, 310 (2018).

The contrary arguments advanced by the City and its *amici* are unavailing. First, as a threshold matter, as the subjects of the City's surveillance, Appellants have standing to challenge the City's use of ALPRs based on the City's collection and retention of their own ALPR location data. *See Am. C.L. Union v. Clapper*, 785 F.3d 787, 801-02 (2d Cir. 2015). Second, the fact that the City's ALPR program captures Appellants' public movements does not place it beyond the ambit of the Fourth Amendment—it is precisely the aggregation of this location

1

history over time that enables the City to deduce the "privacies of life." *See Leaders of a Beautiful Struggle v. Balt. Police Dep't,* 2 F.4th 330, 342 (4th Cir. 2021) (citing *Carpenter,* 585 U.S. at 312). Finally, it is the Fourth Amendment that must govern this Court's analysis of the City's ALPR scheme, not considerations as to the public utility of ALPRs or any legislatively imposed guardrails on their use.

## I. APPELLANTS HAVE STANDING TO CHALLENGE THE SURVEILLANCE OF THEIR MOVEMENTS OVER TIME

The City's standing argument—that Appellants have suffered no Fourth Amendment injury because "they have failed to allege that *anyone* will look at or has looked at" the ALPR data—is misguided. *See* City Br. 6.[1] Appellants need not allege that the City will view their ALPR data because it is the City's *collection and retention* of Appellants' long-term location data that causes the Fourth Amendment injury, independent of the City's particular use of that data. *See Clapper*, 785 F.3d at 801-02. And this data is in the City's possession for improper use at any time.

---

[1] Appellants cite Appellee City of Marco Island's brief herein as "City Br. ___," and references to the district court's record as "Doc ___ - Pg ___."

2

Courts "routinely hold that the subjects of government surveillance have standing to challenge that surveillance." *Scholl v. Ill. State Police*, 776 F. Supp. 3d 701, 709 (N.D. Ill. 2025) (collecting cases). The plaintiffs in *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021), did not allege that Baltimore reviewed, retrieved, or otherwise used the historical location data collected by its aerial surveillance program. Nonetheless, the district court in that case held that "[t]he collection of imagery data associated with the Plaintiffs is an 'injury-in-fact' sufficient to support standing to bring a Fourth Amendment claim." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 456 F. Supp. 3d 699, 708 (D. Md. 2020). The fact that police "may never review the 'dots' associated with the[] Plaintiffs" was irrelevant. *Id.* at 709. On appeal, the Fourth Circuit panel affirmed this holding, explaining that "it is enough to confer standing that plaintiffs are likely to be photographed." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 979 F.3d 219, 225 (4th Cir. 2021), *rev'd on other grounds*, 2 F.4th 330 (4th Cir. 2021).[2]

---

[2] The en banc Fourth Circuit did not reverse this holding. *See Beautiful Struggle,* 2 F.4th at 333. The court held that the appeal was not moot

The City cites two cases in support of its assertion that "Appellants have no basis to enjoin the City from retaining and sharing its ALPR data." City Br. 6 (citing *Scholl*, 776 F. Supp. 3d at 710 and *Schmidt v. City of Norfolk*, No. 2:24cv621, 2026 WL 207513, at *8 (E.D. Va. Jan. 27, 2026)). But these cases cut against the City's standing argument. In *Scholl*, the court analyzed standing at two steps: first, whether the plaintiffs had standing to challenge Illinois's warrantless use of ALPRs, and second, whether the plaintiffs had standing to enjoin the warrantless use of the LEARN database, a national database that stores ALPR photographs. 776 F. Supp. 3d at 707. The court held that the plaintiffs had standing to challenge Illinois's use of ALPRs and collection of ALPR data at the first step. *Id.* at 709. It explained that, because plaintiffs alleged that they regularly drive in Cook County with the same personal vehicle, "one can reasonably infer" that the County's 300 ALPR cameras across each expressway "will photograph plaintiffs' license plates." *Id.* That allegation was enough to confer standing to challenge Illinois's use

---

despite the fact that Baltimore ended its surveillance program prior to the en banc court's consideration of the case because "Plaintiffs also sought to enjoin Defendants' access to any data collected by the AIR program, and Defendants retain the data that proved fruitful." *Id.*

of ALPRs because plaintiffs "surely have standing to allege injury from the collection, and maintenance in a government database, of records relating to them." *Id.* (quoting *Clapper*, 785 F.3d at 801). In contrast, at the second step of the analysis, the court held that the plaintiffs failed to allege facts indicating a "substantial risk that police will soon retrieve plaintiffs' license plate information from the database." *Id.* at 710 (quotations omitted). The court thus held that plaintiffs lacked standing to enjoin the warrantless use of the LEARN database. *Id.*

In *Schmidt*, the court applied the same bifurcated standing analysis and held that the plaintiffs had standing to challenge the City of Norfolk's use of ALPRs to photograph their vehicles and upload and maintain this data in a database. *Schmidt*, 2026 WL 207513, at *7. It was undisputed that the plaintiffs' vehicles were photographed each time they passed an ALPR in Norfolk. *Id.* Thus, because the plaintiffs were undeniably the subjects of "consistent and ongoing [] 'surveillance,'" they had "standing to challenge the constitutionality of that surveillance." *Id.* (citing *Wikimedia Foundation v. Nat'l Sec. Agency*, 857 F.3d 193, 210 (4th Cir. 2017)). And similarly to *Scholl*, at the next step of the analysis, the court held that the plaintiffs lacked standing to challenge warrantless

5

queries of the ALPR database because their vehicles had never "been the subject of a query." *Id.* at *8.

The City here attempts to "collapse the bifurcated standing analysis" used in both *Scholl* and *Schmidt* to allege that Appellants have not suffered a Fourth Amendment injury because they have not demonstrated that the City will *view* their license plate data. *Id.* at *7. The City's standing argument mischaracterizes the nature of Appellants' Fourth Amendment claim. Appellants challenge the long-term *collection and maintenance* of their ALPR data. *See* Doc 50 – Pg 2-3. As the City itself recognizes, "the entirety [of] the Fourth Amendment claim and the injunctive relief Appellants seek is premised on the *City's* retention of the ALPR data." City Br. 6 (emphasis in original). As Appellants have noted, the potential for data sharing and warrantless queries of the City's ALPR database certainly increases privacy concerns. Doc 50 – Pg 6. But Appellants' Fourth Amendment challenge turns entirely on the City's collection and retention of their ALPR data. Appellants have thus established standing under "step one" of the *Scholl* analysis. *See Scholl*, 776 F. Supp. 3d at 709-10.

Appellants have alleged that they drive their personal vehicles across one of Marco Island's bridges virtually every day and are thus regularly photographed by the City's ALPRs. *See* Doc 50 – Pg 4. Because Appellants have sufficiently alleged that they are subjects of the City's ALPR surveillance program, they have standing to challenge that surveillance.

II.   **APPELLANTS HAVE ADEQUATELY STATED A CLAIM THAT THE CITY'S LONG-TERM COLLECTION OF LOCATION HISTORY VIA ITS ALPR PROGRAM CONSTITUTES A FOURTH AMENDMENT SEARCH**

Individuals have a legitimate expectation of privacy "in the whole of their physical movements" over time. *Carpenter*, 585 U.S. at 310. Appellants have sufficiently alleged that the City's long-term aggregation of Appellants' ALPR location data violates that privacy interest. And because the City has collected this information without a warrant, it has carried out an unreasonable search under the Fourth Amendment. *See Katz v. United* States, 389 U.S. 347, 360-61 (1967) (Harlan, J., concurring). Appellants have thus adequately stated a claim under the Fourth Amendment.

The City's argument that the City's ALPR scheme captures only publicly available information and therefore does not infringe on

7

Appellants' privacy rights misconstrues precedent and the basis of Appellants' Fourth Amendment claim. *See* City Br. 4-13. The fact that Appellants have no privacy interest in one discrete snapshot of a publicly available license plate number is of no moment. *Id.* at 12. *Carpenter* made clear that the Fourth Amendment applies to constrain the government's use of technology to pervasively catalogue individuals' public movements over time. *See Carpenter*, 585 U.S at 310. That is because the retrospective quality of location information can reveal "privacies of life," allowing the government to "travel back in time to retrace a person's whereabouts." *Id.* at 311-12. It is thus the aggregation of Appellants' ALPR location data that violates their reasonable expectations of privacy in the "whole of their movements." *See Carpenter*, 585 U.S. at 312. Because Appellants have alleged that the City's ALPR scheme allows for precisely the type of retroactive location tracking at issue in *Carpenter*, they have asserted a cognizable privacy interest.

## A. The Fourth Amendment Protects Appellants from Long-Term Government Surveillance Even in Public View

The City argues that "it is beyond dispute that '[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.'" City Br. at 11

(quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983)).   But the Supreme Court held in *Carpenter v. United States* that *Knotts* and other "public view" cases are inapplicable where, as here, the government uses advanced technology to pervasively monitor long-term public movements.  585 U.S. at 306.

*Carpenter* expressly recognized that "a person does not surrender all Fourth Amendment protection by venturing into the public sphere." *Id.* at 310.   Drawing on *Jones*, the *Carpenter* Court explained that prolonged monitoring using modern technology can violate reasonable expectations of privacy "regardless whether those movements were disclosed to the public at large." *Id.* at 307 (citing *United States v. Jones*, 565 U.S. 400, 415, 430 (2012) (cleaned up)).  *Carpenter* concluded that using cell-site location information ("CSLI") to track the defendant's movements over a seven-day period constituted a Fourth Amendment "search," even though the movement occurred in public view, because similar comprehensive tracking by individual police officers watching public roads is not possible.   *Id.* at 312-13.   *Carpenter* clearly distinguished the short-term tracking of public movements, which is typically not a Fourth Amendment search, from long-term tracking that

9

can reveal habits and patterns and thus provides an intimate window into an individual's life. *See Beautiful Struggle*, 2 F.4th at 341 (citing *Carpenter*, 585 U.S. at 312). "The latter form of surveillance invades the reasonable expectation of privacy that individuals have in the whole of their movements," and is therefore a search. *Id.*

As such, *Knotts* is inapplicable here because the City's ALPR program, which collects and retains three years of Appellants' location data, is prolonged tracking that invades their privacy interests. As in *Carpenter*, the aggregation of this "time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Carpenter*, 585 U.S. at 311 (quoting *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)). The fact that such movement takes place in public view does not change the reality that Appellants' expectations of privacy in the history of their movements over an extended period of time is objectively reasonable. *Id.*

Similarly, the City's repeated assertion that "an individual has no reasonable expectation of privacy in their publicly visible license plate number" misses the point. *See* City Br. at 12. The City cites several cases

10

for the unremarkable (and uncontroverted) position that no Fourth Amendment violation occurs where police officers run motorists' license plates a single time through a database to view non-private registration information. *Id.* (collecting cases). These cases are irrelevant because Appellants do not challenge this practice. Rather, Appellants challenge the deployment of ALPRs to populate a separate database containing a history of their movements over a three-year span. As explained below, Appellants have a reasonable expectation of privacy in *that* information.

## B. Appellants Have a Privacy Interest in Their ALPR Location History over Time

The City incorrectly reduces ALPR data to "nothing more than an individual's license plate number." *See* City Br. 14. At issue in this case is *time and location data*, not merely isolated photographs of license plate numbers. Appellants do not challenge what any one ALPR image shows. "Rather, they challenge the creation of a retrospective database of everyone's movements[.]" *Beautiful Struggle*, 2 F.4th at 345. The City's ALPRs, strategically placed at fixed locations on each of Marco Island's bridges, enable it to create a multi-year record of time-stamped location history for each individual who drives onto and off the Island every day.

11

Doc 50 – Pg 10. This information is functionally no different—and arguably even more precise—than the CSLI at issue in *Carpenter*.

The City and its *amici* attempt to frame *Carpenter* as an outlier confined to its unique set of facts. *See* City Br. 8; *see Amici Curiae* State of Georgia and 18 Other States Br.[3] 13; *see Amicus Curiae* United States Br.[4] 7-8. To be sure, *Carpenter* did characterize its holding as "a narrow one," not calling into question "conventional surveillance techniques and tools, such as security cameras." 585 U.S. at 316. But *Carpenter* did not create a fact-specific rule against warrantless access to CSLI. And *Carpenter* does not lose its precedential status whenever courts are confronted with technology that is not specifically named "cell site location information." *See Carpenter*, 585 U.S. at 313-14; *see also Commc'ns Inv. Corp. v. F.C.C.*, 641 F.2d 954, 976 (D.C. Cir. 1981) ("[T]o say a case has been confined to its facts is just a polite way to say it has been ignored."). To the contrary, *Carpenter* reaffirmed that Fourth Amendment analysis "must take account of more sophisticated systems that are already in use or in development." *Carpenter*, 585 U.S. at 313

---

[3] Cited herein as "Ga. Br. ___."
[4] Cited herein as "U.S. Br. ___."

12

(quoting *Kyllo v. United States*, 533 U.S. 27, 36 (2001)).  The Fourth Amendment framework established in *Carpenter* thus applies with equal force whenever the government uses advanced technology to pervasively monitor the public movements of its citizens.  *See e.g.*, *United States v. Smith*, 110 F.4th 817, 832-33 (5th Cir. 2024) (applying *Carpenter*'s framework in holding government's use of geofence warrants unconstitutional).

The "guideposts" the Supreme Court followed in reaching its decision that the government's warrantless access of CSLI violated the Fourth Amendment in *Carpenter* must therefore guide this Court's analysis of the City's ALPR scheme.  As *Carpenter* explained, whether the government has violated one's reasonable expectation of privacy in the whole of their physical movements turns on two key factors: (1) whether the government used a digital technology to obtain information that would have historically been impossible to obtain without that technology, and (2) whether that information tends to reveal the "privacies of life."  *Carpenter*, 585 U.S. at 311-13.  Each of these factors is satisfied here.

13

### 1. Appellants Have Sufficiently Alleged That the City's Aggregated ALPR Location Data Is Capable of Revealing the Privacies of Life

Starting with the "privacies of life" prong, Appellants have alleged that the long-term aggregation of the City's collected ALPR data can provide an "intimate window" into each Appellant's life. *See Carpenter*, 585 U.S. at 311. Appellants drive across one of Marco Island's bridges virtually every day and are thus regularly photographed by the City's ALPRs. *See* Doc 50 – Pg 4. By retaining these photographs, converted into computer-readable data, for at least three years, the City has effectively created a detailed logbook of Appellants' daily movements onto and off the island. And, as Appellants have asserted, through this aggregated data the City is capable of deducing detailed information about Appellants' daily habits, including where and when each Appellant goes to work, whether they are in town or away on vacation, and with whom they associate. Doc 50 – Pg 10.

The City states that "*Carpenter* clearly dictates that for a search to occur, the technology used must capture 'near perfect surveillance' of the defendant's movements in both public and *private* locations." City Br. 14-15 (emphasis in original) (quoting *Carpenter*, 585 U.S. at 311-12). But

14

that is not what *Carpenter* and other cases instruct.  The Fourth Circuit

in *Beautiful Struggle* utilized *Carpenter*'s guideposts to analyze a Fourth

Amendment challenge to Baltimore's aerial surveillance (AIR) program.

*See* 2 F.4th at 341-42.  Although this surveillance could only record

movements occurring out in the open, and entirely in *public* spaces, the

program still amounted to a search under the Fourth Amendment.  *Id.* at

334.  Moreover, that surveillance program could not capture clear images

of individuals—people and cars were "individually visible, but only as

blurred dots or blobs."  *Id.*  But, as the court explained, this was

irrelevant:

> The "analysis (*i.e.*, the making of inferences)" involved in the
> AIR program may be more labor intensive than deducing
> location history from CSLI, or details about the inside of a
> home from its thermal image, or the fact of a beeper's presence
> inside a home from its activation.  Nevertheless, because AIR
> data is what enables deductions from the whole of individuals'
> movements,  the  Fourth  Amendment  bars  BPD  from
> warrantless access to engage in that labor-intensive process.

*Id.* at 345 (citations omitted).

The fact that photographs taken by the City's ALPRs may not, by

themselves and without further analysis, "show or track anything on, or

off, the Island," *see* City Br. 17, does not automatically place the City's

ALPR scheme beyond the ambit of the Fourth Amendment.  The Supreme

Court has held that inference does not insulate a search. *Kyllo*, 533 U.S. at 36. Alleging that the City may infer, for example, which house of worship an Appellant attends each weekend through aggregated ALPR data is no more speculative than alleging that law enforcement may infer "what hour each night the lady of the house takes her daily sauna and bath" through the use of a thermal-imaging device pointed at a home— which the Supreme Court squarely held constitutes a Fourth Amendment search. *Id.* at 38. Likewise, that aggregated ALPR data reveals intimate details only upon analysis does not remove it from Fourth Amendment scrutiny. *Id.* at 36 (explaining that the Fourth Amendment does not only protect an "8-by-10 Kodak glossy that needs no analysis.").

Appellants have thus sufficiently alleged that the aggregation of the City's ALPR data can allow the City to infer, from the whole of their physical movements, intimate details about them that tends to reveal the "privacies of life." *Carpenter*, 585 U.S. at 311. At this stage, all well-pleaded allegations must be accepted as true, and all inferences resolved in favor of the non-movant. *See Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). And here, it has been alleged, and the inferences

16

show, that such intimate knowledge is collected and stored by the City through its ALPR system.

## 2. Appellants Have Sufficiently Stated That the City's ALPRs Are an Advanced Surveillance Technology That Reveals Information Previously Unknowable

In *Beautiful Struggle*, the Fourth Circuit recognized that *Carpenter* requires courts to consider whether a surveillance technology "transcends mere augmentation of ordinary police capabilities" by allowing police to "travel back in time to observe a target's movements, forwards and backwards." 2 F.4th at 341, 345 (cleaned up). "In the past, attempts to reconstruct a person's movements were limited by a dearth of records and the frailties of recollection." *Carpenter*, 585 U.S. at 312; *see also Jones*, 565 U.S. at 415-16 (Sotomayor, J., concurring). With long-term tracking through ALPRs, that is no longer the case.

The City's use of ALPRs can easily be distinguished from "conventional surveillance techniques and tools, such as security cameras." *Carpenter*, 585 U.S. at 316. The City's citation to pole cameras thus misses the mark. *See* City Br. 12-13. Appellants challenge not fixed-location surveillance of one particular target, but rather the prolonged tracking of their movements across the City. *Cf. Beautiful*

17

*Struggle*, 2 F.4th at 345-46 ("[E]ven though … pole cameras can sometimes reveal intimate information like the AIR program does, that does not mean the AIR program's citywide prolonged surveillance campaign must be permissible as well."). In *United States v. Gregory*, this Court held that the use of a pole camera to observe a criminal suspect's home non-stop for ten months did not violate his right to privacy. *See* 128 F.4th 1228, 1235 (11th Cir. 2025). The *Gregory* Court distinguished *Carpenter* on the basis that "[p]ole cameras are distinct both in terms of the information they mine and the degree of intrusion necessary to do so." *Id.* at 1242. In reaching its conclusion, the Court explained that "the Fourth Amendment does not punish law enforcement for using technology to more efficiently conduct their investigations." *Id.* at 1243 (quoting *United States v. Houston*, 813 F.3d 282, 288 (6th Cir. 2016)). In other words, because law enforcement could be stationed round-the-clock to observe a criminal suspect's home in person, the "fact that they instead used a camera to conduct the surveillance does not make the surveillance unconstitutional." *Id.* (citations omitted).

Thus, under *Carpenter*, one guiding question in considering whether a surveillance technology encroaches upon an individual's

18

expectation of privacy in the whole of their physical movements is: would law enforcement officials be able to effectuate this degree and type of surveillance and discern the same information without the use of that technology?  *See* Orin S. Kerr, *The Digital Fourth Amendment: Privacy and Policing in Our Online World* 155 (2024) (explaining that *Carpenter* works at a high level of generality and asks whether "police traditionally have easy access to detailed location tracking records" and whether they "have that access today."). The answer in this case is clearly no.  As alleged, the City collects and retains ALPR location data for three years, and in doing so, it creates a "retrospective database of everyone's movements across the city."  *Beautiful Struggle*, 2 F.4th at 345. Traditional surveillance tools could not possibly allow an officer to record thousands of passing license plates each minute and populate that information into an easily-searchable database within seconds.  *See* Doc 50 – Pg 5-7.  And while a police officer needs to sleep, eat, and take breaks, an automated, robotic camera does not.  *See Jones*, 565 U.S. at 415-16 (Sotomayor J., concurring) (explaining that this character of modern surveillance technology—its relatively low cost and ability to proceed surreptitiously—"evades the ordinary checks that constrain

19

abusive law enforcement practices: 'limited police resources and community hostility.'") (quoting *Illinois v. Lidster*, 540 U.S. 419, 426 (2004)).

The City's ALPR scheme is far from a "discrete operation surveilling individual targets." *Beautiful Struggle*, 2 F.4th at 345. The City's use of ALPRs to pervasively monitor its residents' movements and retain records of these movements over an extended period of time instead resembles a "dragnet type law enforcement" practice courts have routinely cautioned against. *See Knotts*, 460 U.S. at 281, 283-84 (recognizing that "twenty-four-hour surveillance of any citizen of this country['s]" public movements presents an entirely different constitutional question than limited GPS tracking of one individual); *see also United States v. Sturdivant*, 786 F. Supp. 3d 1098, 1114 (N.D. Ohio 2025) (warning that advanced ALPR systems that operate retroactively may present "dragnet type law enforcement practices" amounting to a Fourth Amendment search).

## C. Appellants Have Met Their Burden at the Motion to Dismiss Stage

Under *Carpenter*, the question of whether the government's particular use of a surveillance technology can capture information

previously unknowable and thus reveal the "privacies of life" requires a fact-intensive assessment of both the quantity and quality of the information collected. The *Carpenter* Court specifically considered the scope, duration, invasiveness, precision, and the length of time gathered information is kept. *Carpenter*, 585 U.S. at 320 (explaining that CSLI is entitled to Fourth Amendment protection in light of its "deeply revealing nature" and its "depth, breadth, and comprehensive reach"). Each of these factors informed the Court's answer as to whether the location data at issue could allow law enforcement to draw inferences about Carpenter himself. *Id.* And it is precisely the *capability* of collected data to enable "deductions from the whole of individuals' movements" that is constitutionally suspect because it is those deductions that reveal the "privacies of life." *Beautiful Struggle*, 2 F.4th at 345.

Whether the City can make these deductions as to each Appellant from the ALPR data it has collected and retained so far is a fact-intensive question that cannot be decided before the Appellants have had the opportunity for full discovery as to exactly how much data is collected by the City's ALPRs, how long it is kept, and who it is made available to. *See Schmidt v. City of Norfolk*, No. 2:24cv621, 2025 WL 410080, at *8

(E.D. Va. Feb. 5, 2025) (denying motion to dismiss where case contained "many unresolved issues of material fact directly relevant to the determination of whether" the ALPR system at issue violated the Fourth Amendment).  At this stage of the case, the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor."  *Smith*, 873 F.3d at 1351.  Appellants have plausibly alleged facts to support their claim that the City's ALPR program violates their reasonable expectation of privacy in the whole of their physical movements, which implicates a Fourth Amendment search.  *See* Doc 50 – Pg 8-10.  Appellants have thus met their burden at the Motion to Dismiss stage and have properly stated a claim under the Fourth Amendment, so they have standing to challenge the City's ALPR scheme.

III.   THE FOURTH AMENDMENT MUST GOVERN THE ALPRS USED BY THE CITY, IRRESPECTIVE OF THEIR LAW ENFORCEMENT UTILITY OR LEGISLATIVELY IMPOSED GUARDRAILS ON THEIR USE

*Amici* supporting the City warn of potential danger to communities that might occur if this Court "strip[s] law enforcement of [the] valuable crime-fighting tool" of ALPRs.  *See* GA Br. 31; *see also* U.S. Br. 2.  But Appellants do not seek to strip the City of its ALPRs, nor do they suggest that ALPRs can *never* be used to aid in law enforcement investigations.

22

The entirety of Appellants' Fourth Amendment claim turns on the City's *long-term* collection and retention of Appellants' ALPR Data. *See* Doc 50 – Pg 14-15. Indeed, the primary relief Appellants seek is "[a]n injunction prohibiting [the City] from retaining *for more than a brief period* information it gathers through ALPRs regarding [Appellants'] movements by car." Doc 1 – Pg 24 (emphasis added).

There is a critical difference between the long-term warrantless, suspicionless, and probable cause-less surveillance of each innocent motorist in a City via ALPRs and cases involving the limited, short-term "use[] of ALPR where the reasonable articulable suspicion to use the ALPR was a given," or where "police had reason to believe that a particular vehicle was involved in a specific crime." *Sidor v. Thornell*, No. CV-25-08141-PCT-DWL, 2025 WL 3282976, at *10 (D. Ariz. Oct. 24, 2025). For example, *amicus* United States discusses a case in which a Georgia ALPR "flagged a vehicle license plate connected" to a sex offender suspected of involvement with the abduction of a missing juvenile from Washington. *See* U.S. Br. 4. And *amici* State of Georgia and 18 Other States raise a recent example in which law enforcement in North Carolina arrested a man wanted in Georgia for murder and other violent

crimes several hours after receiving an ALPR alert on a vehicle associated to him. *See* Ga. Br. 29. Each of these is an example in which ALPRs were used to send police "automatic alerts" when a wanted vehicle passed by a camera. *See* Ga. Br. 17 n.3.[5] Appellants have raised no objection to the use of ALPRs to alert to wanted vehicles where the requisite reasonable suspicion has already been established, and

---

[5] Quoting *The Hotlist: What Happens When a Wanted Car Passes a Flock Safety Camera?*, Flock Safety (June 1, 2023), https://tinyurl.com/bde8tef6. This is precisely what occurred in *United States v. Porter*, No. 25-60163, 2026 WL 746292 (5th Cir. Mar. 17, 2026), which the City raises. *See* City Cit. of Supp. Auth. (Mar. 20, 2026). In *Porter*, law enforcement received an alert that a vehicle associated with a criminal suspect passed by an ALPR. *See Porter*, 2026 WL 746292, at *1. That alert then provided law enforcement reasonable suspicion to conduct the traffic stop. *Id.* at *4-5. The court held that the very limited use of ALPR did not amount to a Fourth Amendment search because the ALPR technology "*in the instant case* provides only periodic information about a vehicle's location when a vehicle passes one of its ten locations where an LPR camera is stationed" in the city. *Id.* at *4 (emphasis added). This is distinguishable from cases in which ALPRs are used to regularly log the location data of all individuals in a city for three years without reasonable suspicion, as is the case here. Moreover, *Porter* involved an appeal from a denial of a motion to suppress evidence and as such, was narrowly focused on only a small number of "hits" within a few days on the defendant's vehicle in a "general [] time period," which the court held could not allow police to trace the defendants' past movements. *Id.* at *1, 3. Here, discovery is needed to assess whether the aggregated ALPR data collected by the City is capable of revealing detailed information about Appellants' daily movements.

Appellants recognize that ALPRs can be used in this manner to aid in critical investigations in real time. But these cases are a far cry from the creation of long-term "voluminous databases of vehicle location information … without individualized suspicion," which is precisely what Appellants challenge here. *United States v. Yang*, 958 F.3d 851, 863 (9th Cir. 2020) (Bea, J., concurring).

The City's ALPR scheme "runs against everyone." *Carpenter*, 585 U.S. at 312. By collecting and retaining the ALPR data of every resident and visitor on Marco Island for three years, the City "need not even know in advance whether they want to a follow a particular individual, or when." *Id*. It is this long-term, dragnet-type surveillance that is constitutionally suspect under the Fourth Amendment. *See Knotts*, 460 U.S. at 283-84. And neither the City nor its *amici* explain why a three-year retention period is necessary—nor whether such a long retention period increases the efficacy of ALPRs to fight crime.

Moreover, the Fourth Amendment imposes constraints on the City's use of ALPRs to continuously track Appellants' movements over time regardless of policy judgments concerning the utility of ALPRs as a "crime-fighting tool." Ga. Br. 31. A conclusion that the City's long-term

collection and retention of Appellants' ALPR location data effectuates a search within the meaning of the Fourth Amendment may "hamper legitimate law enforcement interests.  But hamstringing the government is the whole point of our Constitution."  *Smith*, 110 F.4th at 841 (Ho, J., concurring).

Above all, the "basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967).  The City's pervasive, long-term tracking of Appellants through ALPRs represents precisely the type of "too permeating police surveillance" the Fourth Amendment was designed to guard against. *Carpenter*, 585 U.S. at 305 (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)).  And the Fourth Amendment's guardrails must apply with equal force regardless of whatever law enforcement interests warrantless, suspicionless tracking by ALPRs might serve.

In a similar vein, *amici* State of Georgia and 18 Other States argue that this Court must "exercise care" in considering whether the City's ALPR scheme violates the Fourth Amendment, "lest [it] constitutionalize questions properly left to the democratic process.  Ga. Br. 26 (citing *Riley*

*v. California*, 573 U.S. 373, 408 (2014) (Alito, J., concurring)). But *amici* cite no authority stating that surveillance that otherwise violates the Fourth Amendment somehow would become constitutional if it were enacted by a legislative body. To the contrary, in *City of Los Angeles v. Patel*, 576 U.S. 409, 428 (2015), the Supreme Court had no trouble striking down a warrantless inspection regulation under the Fourth Amendment even though it was enacted by a city government. Nor did being publicly enacted by city leadership prevent Baltimore's aerial surveillance program from violating the Fourth Amendment. *Beautiful Struggle*, 2 F.4th at 347. Constitutional rights exist to protect citizens from unlawful legislative power. The Fourth Amendment's protection against unreasonable searches would be eviscerated if surveillance policies enacted by elected officials were *ipso facto* constitutional. *See Virginia v. Moore*, 553 U.S. 164, 168 (2009) (explaining that the Fourth Amendment is not "a redundant guarantee of whatever limits on search and seizure legislatures might have enacted.").

## CONCLUSION

The Court should reverse the district court's dismissal and remand the case for further proceedings with the amended complaint reinstated.

Dated: March 24, 2026

Respectfully submitted,

/s/ Andreia Trifoi
Andreia Trifoi
John J. Vecchione
Mark S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Telephone: 202-869-5210
Andreia.Trifoi@ncla.legal

*Counsel for Plaintiffs-Appellants*

28

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 5,565 words.  This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it was prepared using Microsoft Word in Century Schoolbook, 14-point font, a proportionally spaced typeface.

Dated: March 24, 2026          /s/ *Andreia Trifoi*
                               Andreia Trifoi

                               *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: March 24, 2026          /s/ *Andreia Trifoi*
                               Andreia Trifoi

                               *Counsel for Plaintiffs-Appellants*